## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**LISA HOOKS,**

    **Plaintiff,**

**vs.**                                        **CASE NO. 4:06cv426-MP/WCS**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of Social Security,**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation

pursuant to 28 U.S.C. § 636(b) and local rule 72.2(D).  It is recommended that the

decision of the Commissioner be reversed and remanded.

**Procedural status of the case**

Plaintiff, Lisa Hooks, applied for disability insurance benefits.  Plaintiff was 49

years old at the time of the administrative hearing, finished 11th grade with special

_____

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007, and is automatically substituted as Defendant.  FED. R. CIV. P. 25(d).

education, and had past relevant work as a door greeter at Wal-Mart.  Plaintiff alleges

disability due to mental retardation and a number of chronic health problems (phlebitis,

asthma, sinus infections, and depression).  The Administrative Law Judge found that

Plaintiff could perform her former work as a Wal-Mart greeter, as well as sedentary jobs

in the national economy (surveillance systems monitor and assembler), and was not

disabled as defined by Social Security law.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by

substantial evidence in the record and premised upon correct legal principles.  Chester

v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a

scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable

person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler,

703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted); Moore v. Barnhart, 405 F.3d

1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if

supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir.

2002).  "If the Commissioner's decision is supported by substantial evidence we must

affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232,

1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial

deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211

(11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to

uphold the Secretary's decision by referring only to those parts of the record which

support the ALJ.  A reviewing court must view the entire record and take account of

evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber

v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1.    Is the individual currently engaged in substantial gainful activity?

2.    Does the individual have any severe impairments?

3.    Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.    Does the individual have any impairments which prevent past relevant work?

5.    Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Analysis**

This case presents a twist upon the usual credibility arguments.  Plaintiff relies upon a consultative psychological assessment by Marie P. Hume, Ph.D., concluding that Plaintiff is mildly mentally retarded and has a poor prognosis for functioning in a work setting.  From this Plaintiff argues that it was not appropriate for the Administrative Law Judge to credit her own description of her abilities to function in daily activities and to return to her former work.  Plaintiff contends that the record contains significant other evidence that Plaintiff is not the best historian of her abilities.

Defendant, on the other hand, argues that the burden of proof was on Plaintiff, and if her own testimony was not reliable, it was incumbent upon Plaintiff to make that proof.  Defendant contends that the ALJ was entitled to credit Plaintiff's testimony as to her capabilities.

Dr. Hume examined and tested Plaintiff on November 22, 2002.  R. 239.  She reported that Plaintiff had received job training at Goodwill for about six months, and that training had helped her obtain the greeter job at Wal-Mart.  *Id.*  Plaintiff had held that job for about five years.  *Id.*  Plaintiff told Dr. Hume that Wal-Mart terminated her employment because she missed work due to asthma and sinus problems.  *Id.*  Plaintiff also reported that she suffered from phlebitis in her left leg, preventing her from being able to stand for long periods of time.  *Id.*  Plaintiff said that she became depressed "real easy."  R. 239.  Plaintiff said that she was able to clean her house, care for herself, care for her puppy, and cook dinner at night.  R. 240.  She said she decided to apply for social security disability because she and her husband needed the money.  *Id.*

Dr. Hume observed that Plaintiff was overweight and childlike in appearance and behavior.  R. 240.  She noted that she had arrived an hour early for her appointment. *Id.*  Dr. Hume found that Plaintiff was very easily comprehensible when she spoke, initiated and participated in conversation, seemed to enjoy interactions, did not display difficulty with attention or concentration, made good eye contact, was alert and aware of her surroundings; her mood appeared to be within normal limits, she was not anxious, and there were no signs of thought disorder.  *Id.*  She found Plaintiff to be "very friendly and sociable."  *Id.*  Plaintiff attempted each task during the testing with "an appropriate level of effort."  *Id.*  Dr. Hume thought that the testing was a valid assessment.  *Id.*

On the Wechsler Adult Intelligence Scale, Plaintiff scored 68 verbal, 69 performance, and 66 full scale.  R. 240.  Dr. Hume said that Plaintiff's "general cognitive ability is in the Deficient range of intellectual functioning."  R. 241.  Her diagnostic impression on Axis I was dysthymic disorder, and on Axis II, mild mental retardation.  *Id.*

It was found that Plaintiff did not demonstrate any significant cognitive strengths or deficits.  *Id.*  Dr. Hume concluded that "[a]t this level of general aptitude, her ability to function effectively in typical adult activities is significantly compromised."  *Id.*  Dr. Hume said that her prognosis was poor.  *Id.*  She said that Plaintiff "is unable to function adequately to maintain a job where she has to interact frequently with the public.  She is extremely dependent upon her husband."  *Id.*  Dr. Hume also concluded that Plaintiff was "incapable of managing any funds deemed appropriate for her."  *Id.*

At the administrative hearing on December 6, 2005, Plaintiff testified that she was 49 years of age.  R. 33-34.  She said that she was able to read and write, do simple mathematical calculations, write a short note to a friend, and compile a grocery list.  R. 35.  She did not have a driver's license and had never driven a motor vehicle.  *Id.*

Plaintiff said she thought that she worked at Wal-Mart from 1995 to 1997, but the records showed that she worked at Wal-Mart from 1992 to 1999.  R. 35-36.  Plaintiff said that she enjoyed being a greeter for Wal-Mart, finding it very interesting.  R. 36.  She said that the job required her to stand for eight hours without lifting or carrying.  R. 37.  She said that she missed a lot of work due to asthma and lost her job for that reason.  *Id.*  She also said that she had very painful phlebitis in her leg, implying that this contributed to the loss of the job.  *Id.*

Plaintiff said that she had not had phlebitis since 1999, and said that that painful problem had resolved.  R. 38.  She said, however, that "it seems when I stand up a long time, like if I'm on a job, like at Wal-Mart, if I stand up all that time, it really bothers me."  R. 43.  She said she had not worked in so long, she did not know whether the phlebitis would return.  R. 51.

Plaintiff said that she had had two asthma attacks since 1999, when she left her job with Wal-Mart.  R. 38.  She said she was in the hospital for a week in November, 2004, with asthma.  R. 39.  She was also in the hospital for asthmatic bronchitis in January, 2002.  R. 42.  An inhaler for asthma was prescribed.  R. 39.

Plaintiff said she was provided medication for control of blood pressure, and her blood pressure was "much better" since she began the medication.  R. 40-41.  She said also that her urinary problems had been cleared up, too.  R. 43.

Plaintiff said that when she was working, she had a banking account with her husband.  R. 45.  She said she was able to manage her money.  *Id*.  She said she could write checks and pay bills.  R. 46.  Her husband was unable to do this.  *Id*.

Plaintiff said that she got along with people well, and people liked her when she was a greeter.  R. 47.  She said that she missed the job a lot.  *Id*.  She said that Wal-Mart had asked her to return to work, but she did not know how she would get there.  *Id*. She felt that lack of transportation was the main reason she was not able to return to work with Wal-Mart.  R. 48-49.

At the conclusion of this testimony, the following exchange took place between the Administrative Law Judge and Plaintiff's attorney:

ALJ:      – here's the deal, Mr. Durett.  I mean, even if I were, I mean, I don't find any fault with her testimony, you know, and –

ATTY:    How could you?

ALJ:      Well, what do you want me to do, you know?

ATTY:    I don't know what to do either.

ALJ:       I'm just saying, you know, I mean, those clearly
           [were] admissions against interest, you know.
           But I mean –

R. 51.  Plaintiff's attorney directed the ALJ's attention to the evidence of phlebitis, but

the ALJ replied that that Plaintiff had phlebitis only one time.  *Id*.  He said that there was

"nothing of a more recent vintage to suggest . . . she's had continuing problems . . . ."

R. 52.  Plaintiff acknowledged that that was true.  *Id*.  In the remainder of the

examination of Plaintiff, there was no mention of the report of Dr. Hume.  R. 52-59.  The

ALJ commented that despite her learning difficulties, "she's adapted pretty dog-gone

well."  R. 59.  Plaintiff volunteered at that point that she had helped her mother find a

place to live.  R. 60.  Plaintiff's attorney made no argument about Dr. Hume's analysis,

and did not ask to put on other evidence of Plaintiff's ability to learn and perform a job

other than the greeter job.

There is also evidence that Plaintiff has suffered chronic mild depression, often

characterized as situational.  She was diagnosed with depression and was taking an

anti-depressant medication in October, 1999.  R. 181.  She returned to her treating

physician reporting anxiety or depression, and receiving medication, on January 24,

2000, June 12, 2000, October 31, 2000, March 2, 2001, December 6, 2002, July 11,

2003, August 22, 2003, March 16, 2004 (panic attack), and on October 22, 2004.  R.

179, 177, 175, 174, 359, 355, 353, 346, and 326.

The Administrative Law Judge found that Plaintiff had a borderline IQ, but

reasoned that this caused only mild difficulties in maintaining concentration,

persistence, or pace.  R. 23.  He then relied upon Plaintiff's testimony to find that she

could return to her former work and could do other jobs:

> The undersigned notes that when the claimant was questioned regarding her ability to return to her work at Wal-Mart, she eagerly indicated her desire to return to this job.  She testified that the only impediment that prevented her from returning to her past work at Wal-Mart was a ride to and from her place of employment.  The claimant admittedly testified that if she had a ride, she could return to her job as a door greeter.  The Administrative Law Judge also notes that despite the claimant's limited IQ, which is documented in Exhibit 6F, the claimant has considerable adaptive functioning; she has the ability to handle a checking account, taking care of all her family's finances and that she had the ability to get her mother into a nursing home.  The undersigned notes that the claimant had a steady job at Wal-Mart for over 7 years and that she took care of her husband.  Furthermore, her day to day activities clearly demonstrate adaptive functioning above the IQ scores that are documented in Exhibit 6F.  The Administrative Law Judge finds that the claimant's honest hearing testimony clearly demonstrates her ability to do her past relevant work if she could secure reliable transportation.

R. 25.

Thus, the ALJ relied exclusively upon Plaintiff's testimony to find her not disabled, and disregarded the consultative opinion of Dr. Hume.  The Commissioner argues that Dr. Hume's opinion was entitled to little weight because she was a consultative source.  Ordinarily the Commissioner is not required to defer to a consultative medical source.  McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).  This rule is usually applied when a consultative opinion is contrary to the opinion of a treating medical source.  A physician's medical opinion is entitled to greater weight than the opinion of a consulting physician.  Wilson v. Heckler, 734 F.2d 513, 516 (11th Cir. 1984).

I see little reason to follow this rule here.  Intelligence quotient testing is always done by a consultative expert, and it is unlikely that there will be any treating source opinions for mental retardation.  The issue more properly framed is whether Plaintiff's testimony was substantial evidence to support the Administrative Law Judge's conclusions in the face of the other evidence of record, including the expert opinion of

Dr. Hume.  Dr. Hume observed Plaintiff during the examination, and found her to be sociable and friendly, just as did the ALJ.  But based upon expert testing, Dr. Hume found Plaintiff's abilities to be significantly limited.

Plaintiff points to other evidence in the record concerning her ability to adapt that was not discussed by the Administrative Law Judge.  Plaintiff argues that this evidence, combined with Dr. Hume's assessment, shows that Plaintiff is not a reliable historian as to her abilities, and, therefore, the ALJ should not have relied entirely upon her testimony.

Plaintiff points out that Nora Carrasco, a social security representative interviewed Plaintiff by telephone.  R. 110.  Ms. Carrasco found Plaintiff to be polite, cooperative, and talkative, and was able to comprehend statements made in a simple, basic manner.  *Id.*  But when Plaintiff came to the office on June 11, 2002, Ms. Carrasco said she "[h]ad to explain all the forms & process for applying in very simple terminology– [claimant] was quick to respond 'ok' even when she didn't comprehend what was being said."  *Id.*

Another social security agent prepared a disability report, also on June 11, 2002. R. 112-121.  The report is a statement of Plaintiff's claim as recorded by the agent. Recording Plaintiff's statement of her claim, the agent said that Plaintiff "was moved from task to task but continued to fail to perform.  Finally, she was physically unable to stand the required hours to serve as a 'greeter.' " R. 113.  Plaintiff told the agent that she was "unable to hold a job because of her limited aptitude, lack of skills, inability to learn required task or perform duties."  *Id.*  It was noted that Plaintiff "could not hold a job and could not work in the pet department or in stock at Wal-Mart."  R. 120.  Plaintiff,

through this agent, stated that her primary disability was her limited intellectual capacity "which prevents her from absorbing the information necessary to hold even the simplest of jobs."  R. 121.

Plaintiff, through her attorney, further notes that while she testified at the hearing that she had not had trouble with phlebitis since 1999, R. 38 and 63, this was not a true report of her medical history.  On January 20, 2005, she was treated for superficial phlebitis of her left anterior shin.  R. 323.  She had been seen at "Patients First" on the preceding Sunday and had the diagnosis of phlebitis.  *Id.*  Plaintiff also said that she had been twice treated for asthma attacks, and denied having an asthma problem since November, 2004.  R. 38-39.  Plaintiff's attorney argues that this, too, was an inaccurate history.  He points out that Plaintiff was in the hospital in May, 2005, with an asthma attack.  R. 370-371.

Plaintiff's physician who treated her for asthma, Ron Saff, M.D., also commented on Plaintiff's mental capabilities.  He said she was "very slow mentally and may have some mental retardation."  R. 222.  He thought that Plaintiff could do physical work related "activities," such as sitting, standing, and so forth, but said that "if she was to do any types of mental activities that required a lot of understanding and memory, sustained concentration and persistence, she may have some deficits."  *Id.*

Plaintiff argues that in light of this evidence, Plaintiff's own statements as to her abilities is not substantial evidence to deny her claim.  Plaintiff argues that the case should be remanded for a more complete investigation of her ability to adapt and actually perform mental work-related tasks, and to determine whether her condition meets Listing 12.05C.

Listing 12.05C requires a finding of disability when there is "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

> Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities.  *See Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1517 (11th Cir.1985).  This court, however, has recognized that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.  *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir.1986) (rejecting a claim of section 12.05(C) mental retardation where the claimant's I.Q. score of 69 was inconsistent with evidence that he had a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in various technical jobs such as an administrative clerk, statistical clerk, and an algebra teacher).  Although the ALJ is allowed some leeway to evaluate other evidence *when determining the validity of an I.Q. score*, an ALJ may not consider a claimant's age, education, and work experience after the ALJ accepts the I.Q. score as valid and finds that the claimant meets or equals the criteria of a listed impairment.  *See Ambers v. Heckler*, 736 F.2d 1467, 1470 (11th Cir.1984) ("consideration of the fact that [claimant] could return to her past work is not a relevant inquiry once she has met the Listing of Impairments in Appendix 1"); 20 C.F.R. § 404.1520(d).

Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (emphasis added).  The court also said, however, that if the Commissioner concedes that the current I.Q. score *is* valid and finds that the claimant has "an additional and significant work-related limitation of function," then the requirements of Listing 12.05C are met so long as the mental retardation manifested itself before the age of 22.  979 F.2d at 838.  "It is therefore critical that an ALJ specifically address and resolve the validity of an I.Q. score; if the I.Q. score is valid and meets or equals the criteria of a listed impairment, the ALJ can go

no further." Thomas v. Barnhart, No. 04-122214, 2004 WL 3366150, *2 (11th Cir. 2004) (non-argument calendar).

It is unclear in this case whether the Administrative Law Judge determined that Plaintiff's I.Q. scores were invalid.  He summarized the findings of Dr. Hume, noting the full scale I.Q. score of 66, R. 22, but did not again discuss them or state what weight he gave her findings.  He then said that "despite the claimant's limited IQ, *which is documented in Exhibit 6F*, the claimant has considerable adaptive functioning . . . ."  R. 25.  He said that "her day to day activities clearly demonstrate adaptive functioning above the I.Q. scores that are documented in Exhibit 6F."  *Id*.  Perhaps this is an implicit finding that the I.Q. scores were invalid, but what made Dr. Hume's testing and diagnosis invalid was not discussed.

In Popp, the claimant argued the applicability of Listing 12.05C because he had a performance I.Q. score of 69.  779 F.2d at 1499.  The court said that the issue was "whether the ALJ may find the results of an IQ test to be incredible so that Listing 12.05 is not satisfied . . . ."  *Id*.  The court said that if this score was to be believed, it would be used in applying Listing 12.05C.  *Id*.  It was in this context (that is, whether to the score was valid) that the court said that "the test results must be examined to assure consistency with daily activities and behavior."  *Id*.  The court had substantial evidence before it that the score of 69 was not valid:

> At the time of the hearing, Popp was a twenty-nine year old man who held a two-year college associates degree and was enrolled in a third year of college as a history major.  From 1972 through 1976, Popp worked as an administrative clerk in the Army.  After discharge, he was employed at a VA hospital as a statistical clerk.  Other later jobs included work as a postal clerk, soil testing technician, cashier, and algebra teacher at a private school for grades ten through twelve.  A vocational report

completed by Popp indicated that his past work involved considerable
technical knowledge and skills in the use of various machines, tools, and
equipment as well as responsibilities for the completion of various reports.

*Id.*, at 1498.  There was also substantial evidence that Popp "tended to place himself in

a very unfavorable light."  *Id.*, at 1500.  The court concluded that "the ALJ was not

required to find that Popp was mentally retarded based on the results of the IQ tests."

*Id.*

The evidence in the case at bar is obviously not like the evidence in <u>Popp</u>.

Plaintiff's work as a greeter at Wal-Mart is far less persuasive of the existence of

significant adaptive work skills contrary to the I.Q. scores.  As noted above, Plaintiff's

education includes completion of only the 11th grade but with special education

services.  She has never had a license to drive, and at age 49, had had only four years

of income at a level considered "substantial gainful activity."  R. 97-98.  The same

distinction was made in <u>Durham v. Apfel</u>, 34 F.Supp.2d 1373, 1380 (N.D. Ga. 1998)

(finding disability, the claimant, unlike the claimant in <u>Popp</u>, had only a third grade

education and had worked primarily as a heavy laborer).

Stated another way, Plaintiff's friendly, agreeable testimony at the administrative

hearing ordinarily would be substantial evidence in the record to support a finding that

she could do her former work.  But this is not a case where Plaintiff has had a history of

achievement quite inconsistent with her I.Q. scores, and thus considerably less reason,

in comparison to <u>Popp,</u> to believe the scores to be invalid.  The critical antecedent

question is whether there is substantial evidence in the record to believe that Dr.

Hume's testing was flawed.  If it was not, then the first requirement of Listing 12.05C

would have been met.  And if Plaintiff meets Listing 12.05C, it would be improper to rely

upon Plaintiff's desire to return to her former job as evidence of a lack of disability.  "A

claimant whose impairment *meets a listing* is disabled when not working, even if he or

she worked in the past with the impairments, and even if he or she could return to his or

her past work."  <u>Durham v. Apfel</u>, 34 F.Supp.2d at 1381 (emphasis added), citing

<u>Ambers v. Heckler</u>, 736 F.2d 1467, 1469-70 (11th Cir. 1984).

  If the I.Q. scores are found to be valid, then the second aspect of Listing 12.05C

will probably have been met.  The Administrative Law Judge found at step two of the

analysis that Plaintiff's phlebitis was a *severe* impairment.  R. 23.  As noted above,

Listing 12.05C is satisfied if there is a valid I.Q. score of 60 through 70 and the claimant

has some other physical or mental imposing a "significant work-related limitation of

function."  Listing 12.05C.  A "significant" limitation is "more than 'minimal effect' on the

claimant's ability to perform basic work activities."  <u>Lowery v. Sullivan</u>, 979 F.2d at 837,

citing <u>Edwards by Edwards v. Heckler</u>, 755 F.2d 1513, 1517 (11th Cir.1985).

> An impairment imposes significant limitations when its effect on a
> claimant's ability to perform "basic work activities" is more than slight or
> minimal.  The question under Listing 12.05(C) [step two of the analysis],
> however, is not whether the impairment is in and of itself disabling, *see*
> *Wright v. Schweiker*, 556 F.Supp. 468, 476 (M.D. Tenn. 1983); thus,
> "significant" requires something less than "severe" within the meaning of §
> 404.1520(c).  That "significant" involves something more than "minimal"
> but less than "severe" follows from the regulations.  Once a claimant is
> found to have a "severe impairment" within the meaning of § 404.1520(c),
> he is deemed disabled (he must also meet the durational requirement),
> and the analysis comes to an end.  It is only when the impairment is not
> severe that the inquiry proceeds to determine whether the claimant is
> disabled under Appendix 1.  A claimant is disabled under § 12.05(C) of the
> Appendix when the combination of the impairments renders the claimant
> severely impaired; that is, disabled. Thus, the impairment referred to in §
> 12.05(C) is something less than "severe" as defined in § 404.1520(c).

Edwards by Edwards v. Heckler, 755 F.2d 1513, 1517 (11th Cir.1985).  "[A]n

impairment under the second prong of § 12.05(C) need not in itself be disabling . . . .  It

would make no sense that when a low I.Q. is present there must be added to it a

separate severe impairment."  Id., 1515-1516.  The finding that Plaintiff's recurrent

phlebitis is a "severe" impairment satisfies the second aspect of Listing 12.05C.

Remand is recommended, therefore, so that the Commissioner can have Plaintiff

tested and evaluated again by another expert and so that the Commissioner can make

explicit findings as to whether the I.Q. test scores that result are valid in light of the other

evidence.  I agree with the Commissioner that it was Plaintiff's burden to come forward

at the administrative hearing with lay evidence as to her abilities, but a remand is

recommended to reconsider the issue of the validity of the I.Q. scores.  Plaintiff should

also be permitted to submit lay evidence of her abilities to cope with the demands of

daily life.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to

deny Plaintiff's application for Social Security benefits be **REVERSED** and the case be

**REMANDED** for the purposes set forth in this report and recommendation.

**IN CHAMBERS** at Tallahassee, Florida, on June 7, 2007.


**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**